UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE EMILIO A.L.,[1]<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF THE CENTRAL VALLEY DETENTION FACILITY, et al.,<br><br>Respondents. | No. 1:26-cv-06311-TLN-CKD<br><br>A# 240-813-679<br><br>**RELEASE ORDER** |

This matter is before the Court on pro se Petitioner Jose Emilio A.L.'s ("Petitioner") Petition for Writ of Habeas Corpus ("the Petition"). (ECF No. 1.) Respondents filed an opposition. (ECF No. 8.) For the reasons set forth below, the Petition is GRANTED and Respondents are ordered to IMMEDIATELY RELEASE Petitioner.

///

///

///

///

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

## I. Factual and Procedural Background

Petitioner is an asylum-seeker who entered the United States on May 2, 2022. (ECF No. 1 at 7, 33.) After presenting himself to U.S. Border Patrol, Petitioner was released on parole and enrolled in the Intensive Supervision Appearance Program. (*Id.* at 6; ECF No. 8-1 at 14.) In the time that followed, Petitioner resided in North Philadelphia. (ECF No. 1 at 6.) He worked in construction with a work permit and Social Security card and paid his taxes. (*Id.* at 7, 24.) He supported his family, including his children and grandchildren. (*Id.* at 7.) He has no criminal history. (*Id.*; ECF No. 8-1 at 3.)

On May 15, 2026, Petitioner was detained by immigration authorities while he was at work. (ECF No. 1 at 7.) According to the government's documents, immigration authorities conducted operations at the construction site where Petitioner worked after Patrol Agent in Charge ("PAIC") Juan Di Bella was "informed by employees at a nearby worksite that over a dozen illegal aliens were working at the . . . construction site. PAIC Di Bella routinely patrols local construction sites and hotels/motels due to recurring incidents involving illegal aliens, frequently traveling from out of state for employment." (ECF No. 8-1 at 2–3.) Petitioner states that he was in a car with four other individuals about to enter their construction worksite. (ECF No. 1 at 7.) A black vehicle with no license plates or logos pulled up. (*Id.*) A man got out and, without identifying himself, began demanding the workers' documents. (*Id.*) The passengers handed over identification cards, work permits, and other documents. (*Id.*) More vehicles arrived. (*Id.*) Petitioner was removed from the vehicle and thrown to the ground, causing injury to his head. (*Id.*) He was taken to a U.S. Immigration and Customs Enforcement ("ICE") office and held without being allowed to call a lawyer or his family. (*Id.* at 8.) He did not have an opportunity to request a bond hearing. (*Id.*)

Petitioner was issued a Form I-200 administrative warrant later that day. (ECF No. 8-1 at 11.) On May 26, 2026, eleven days later, Petitioner was placed in removal proceedings and issued a Notice to Appear. (*Id.* at 7–9.) He was eventually transferred between detention facilities in New York, Ohio, Virginia, Texas, and Arizona, before arriving at the Central Valley Annex. (ECF No. 1 at 8–9.)

Petitioner requested a custody determination hearing on August 8, 2026, and that hearing is scheduled to take place August 27, 2026. (ECF No. 8-1 at 6; ECF No. 8-3.) However, on August 11, 2026, Petitioner was ordered removed to his country of citizenship. (ECF No. 8-2.) Petitioner reserved his right to appeal, the deadline for which has not yet elapsed, and is actively seeking immigration relief. (*Id.*; ECF No. 1 at 6–7.)

Petitioner has now been detained for over three months. (ECF No. 1 at 2.) Petitioner challenges the lawfulness of his civil detention and seeks immediate release. (*Id.* at 20–21.)

## II. Standard of Law

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. Analysis

Petitioner claims his detention violates the Fifth Amendment Due Process Clause.[2] (ECF No. 1 at 20–21.) In opposition, Respondents contend Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) ("§ 1225(b)(2)"). (ECF No. 8 at 1.) They acknowledge however that if Petitioner's detention is governed by 8 U.S.C. § 1226(a) ("§ 1226(a)"), he is eligible for a custody determination hearing, and one has been scheduled. (*Id.*) Respondents claim they did not schedule a bond hearing at the outset of Petitioner's detention because he declined to consent

[2] The Court liberally construes Petitioner's pro se filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

to one,[3] so the Executive Office for Immigration Review waited to receive his request. (*Id.*)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (2001). These due process rights extend to immigration proceedings, including detention and deportation proceedings. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

A. <u>Liberty Interest</u>

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71 (1992)). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

The Court finds Petitioner has a clear interest in his continued freedom protected by the Due Process Clause. The government's decision to release Petitioner on parole was an "implicit promise" that he would not be re-detained during the pendency of his immigration proceedings if

[3] The accuracy of this contention is unclear. Respondents cite to a Notice of Custody Determination document dated May 15, 2026, with a marked checkbox for the statement: "I do not request an immigration judge review this custody determination." (ECF No. 8 at 1 (citing ECF No. 8-1 at 13).) However, the document shows Petitioner refused to sign the form. (ECF No. 8-1 at 13.)

he abided by the terms of his release. *Morrissey*, 408 U.S. at 482. Respondents do not claim, and there is nothing on the record to suggest that Petitioner violated any of the terms of his release. Petitioner has lived in the United States for over four years, during which time he pursued immigration relief, maintained steady employment, and provided for his family. The amount of time Petitioner spent released in this country and the life he built in that time create a powerful interest for Petitioner in his continued liberty. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–94 (E.D. Cal. 2025) (finding similarly).

The Court rejects Respondents' argument that Petitioner is subject to mandatory detention under § 1225(b)(2) as the Ninth Circuit has confirmed the government's interpretation of the statute is incorrect. *Rodriguez Vazquez v. Bostock*, 2026 WL 2196424, at *3 (9th Cir. July 30, 2026). The mandatory detention scheme of § 1225(b)(2) applies only to noncitizens entering the United States at the border. *Id.* at *10. In contrast, individuals like Petitioner who are "present without admission who are apprehended in the interior of the United States," are subject to discretionary detention under § 1226(a). *Id.* at *3. Accordingly, the Court finds Petitioner maintains a clear interest in his continued liberty protected by the Due Process Clause.

B. <u>Process Required</u>

To determine what process is necessary to ensure any deprivation of Petitioner's protected liberty interest accords with the Constitution, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). These factors support Petitioner's constitutional right to notice and a pre-deprivation hearing.

First, as explained above, Petitioner has a significant private interest in his own liberty that is unquestionably affected by the government's actions detaining him. The amount of time Petitioner spent at liberty underscores the gravity of its loss. *See Doe*, 787 F. Supp. 3d at 1094.

Second, the risk of erroneous deprivation of Petitioner's liberty interest is considerable as

the government failed to abide by its governing statute and regulations when taking Petitioner into custody. The plain language of § 1226(a) provides that a noncitizen may only be arrested and detained "on a warrant issued by the Attorney General . . . pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a); *see Chogllo Chafla v. Scott*, 804 F. Supp. 3d 247, 264 (D. Me. 2025) ("Issuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a). . . . As such, it follows that absent a warrant a noncitizen may *not* be arrested and detained under section 1226(a).") (emphasis in original). The Immigration and Nationality Act's implementing regulations further provide: "*At the time of issuance* of the notice to appear, or *at any time thereafter* and up to the time removal proceedings are completed, the [noncitizen] may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest." 8 C.F.R. § 1236.1(b)(1) (emphasis added). Taken together, absent an exception, an administrative warrant must be issued prior to a noncitizen's arrest and it must be issued contemporaneously with, or subsequent to, a Notice to Appear initiating removal proceedings against the noncitizen.

Under the warrantless arrest exception, the government may arrest a noncitizen if an officer has reason to believe the noncitizen is in the country unlawfully and is likely to escape before a warrant can be obtained. 8 U.S.C. § 1357(a)(2). If an arrest is made under this exception, the noncitizen "shall be taken *without unnecessary delay* for examination before an officer of the Service having authority to examine [noncitizens] as to their right to enter or remain in the United States." *Id.* (emphasis added). The noncitizen shall also be placed in formal removal proceedings and must be advised of the reason for their arrest and right to representation. 8 C.F.R. § 287.3(c). Absent exigent circumstances, an initial custody determination and a decision to issue a warrant and Notice to Appear must occur within 48 hours of the arrest. *Id.*

The government did not comply with these statutory and regulatory mandates. Petitioner was issued a warrant after he was already taken into custody, and he was not served a Notice to Appear until eleven days later. Respondents do not claim or otherwise establish the warrantless exception applies here. It thus follows that Petitioner's liberty has indeed been erroneously deprived.

That Petitioner has since been scheduled for a bond hearing does not cure the government's defects. "ICE, like any agency, 'has the duty to follow its own federal regulations.'" *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003)); *Ramon-Sepulveda v. I.N.S.*, 743 F.2d 1307, 1310 (9th Cir. 1984) ("It is a well-known maxim that agencies must comply with their own regulations.") (quoting *Confederated Tribes and Bands of the Yakima Indian Nation v. F.E.R.C.*, 734 F.2d 1347, 1355 (9th Cir. 1984).) The prerequisites to arrest and detention outlined in § 1226(a) and its implementing regulations are unequivocal and do not afford the government forgiveness simply by providing a bond hearing after the fact. *See Romero-Perez v. Blanche*, No. 2:26-CV-01708-RFB-BNW, 2026 WL 1724752, at *4 (D. Nev. June 15, 2026) ("Critically, Respondents cannot cure [invalid warrant and failure to conduct custody determination] violations by conducting a *post-hoc* bond hearing, as the warrant requirement and the initial custody determination are designed to prevent unjustified detention in the first instance.").

Additionally, because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest for his detention to comport with due process. *Zadvydas*, 533 U.S. at 690. While "[t]he government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings," Petitioner has received virtually no procedural safeguards to ensure any detention is reasonably related to those purposes. *Hernandez*, 872 F.3d 976. Respondents do not argue Petitioner is a danger or a flight risk. As Petitioner has no criminal record, has demonstrated ties to his community, and has an interest in continuing to appear at future immigration proceedings while he pursues immigration relief, the risk that he is being detained without proper justification is exceedingly high. *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Accordingly, for these several reasons, the risk that Petitioner has been erroneously deprived of his liberty is exceedingly high.

Finally, the government's interest in detaining Petitioner without first providing sufficient notice and hearing is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL

1927596, at *5 (E.D. Cal. July 14, 2025). Notice and custody determination hearings are routine processes for Respondents. Indeed, they are the very processes required under 8 U.S.C. § 1226(a) and its implementing regulations. Any burden associated with their provision does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation. Respondents articulate no legitimate interest in detaining Petitioner absent these processes.

Upon consideration of the *Mathews* factors, the Court finds Petitioner was owed notice and a hearing before a neutral decisionmaker to determine whether his detention was justified "at a meaningful time and in a meaningful manner." 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Failing to do so, Respondents have violated the Fifth Amendment Due Process Clause in Petitioner's detention.

## IV. CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus (ECF No. 1) is GRANTED. It is FURTHER ORDERED:

1. Respondents must IMMEDIATELY RELEASE Petitioner Jose Emilio A.L. **(A# 240-813-679)** from custody. At the time of release, Respondents must return all of Petitioner's documents and possessions and provide a copy of this Order. Respondents must file a **notice certifying compliance** with this provision **within two (2) court days** from the date of this Order.

2. Respondents are ENJOINED from re-arresting or re-detaining Petitioner, while subject to 8 U.S.C. § 1226(a), absent compliance with statutory and constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral factfinder where the government shows by clear and convincing evidence that its interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention such that no alternative to detention can mitigate that risk. *See Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present.

3. Petitioner's Application to Proceed *In Forma Pauperis* (ECF No. 2) is GRANTED.

4. Petitioner's Motion for Temporary Restraining Order (ECF No. 3) and Motion to Appoint Counsel (ECF No. 4) are DENIED as moot.

5. **The Clerk of Court is directed to serve Central Valley Annex with a copy of this Order.**

6. The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

DATE: August 24, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE